IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RUPLE BUILDERS, INC., :
    Plaintiff and : No. 2:17-cv-00004
    Counterclaim-Defendant :
     : (Judge Kane)
    v. :
     :
BRACKENRIDGE CONSTRUCTION :
CO., INC., :
    Defendant and :
    Counterclaim-Plaintiff :

# MEMORANDUM

Before the Court is Defendant Brackenridge Construction Company ("Defendant")'s motion to strike the declaration (the "Declaration") of John Ruple ("Ruple") (Doc. No. 55), filed by Plaintiff Ruple Builders, Inc. ("Plaintiff"), in opposition to Defendant's pending motion for summary judgment (Doc. No. 42), and motion for sanctions (Doc. No. 55).

## I. BACKGROUND

Defendant filed the instant motion on December 28, 2017 (Doc. No. 55), in connection with its motion for summary judgment (Doc. No. 42), which it filed on December 7, 2017 (Doc. No. 42).[1] The underlying action involves allegations of breach of contract and unjust enrichment following a contractual engagement between the two parties (the "Subcontract") entered into in 2016, in connection with a commercial construction project in Cleveland, Ohio. (Doc. No. 1.) In the instant motion to strike, Defendant challenges various portions of the Declaration for purposes of the Court's analysis of its summary judgment motion.[2]

---

[1] Because the instant Memorandum addresses only Defendant's motion to strike and for sanctions (Doc. No. 55), and not the underlying motion for summary judgment (Doc. No. 42), the Court declines to recite the full factual background of the above-captioned action herein.

[2] Ruple's deposition (the "Deposition") was conducted in connection with a related state action captioned Ruple Builders, Inc. v. MBC Development, Inc., and filed in the Cuyahoga County

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 – which pertains to summary judgment – provides, in relevant part, that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." See Fed. R. Civ. P. 56(d). Rule 56 also states that the Court may, "[i]f satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay . . . order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result" after providing the offending party with notice and reasonable time to respond. See Fed. R. Civ. P. 56(h).

### B. Sham Affidavit Doctrine

When a party challenges a court's consideration of an affidavit or declaration for purposes of summary judgment on the basis that the document contradicts prior testimony, while "[t]he Federal Rules of Civil Procedure do not prescribe how courts should address subsequent affidavits[,]" the United States Court of Appeals for the Third Circuit has "held that 'a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict.'" See Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 251 (3d Cir. 2007) (quoting Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004)). This principle is commonly referred to as the "sham affidavit doctrine." See id.

---

Court of Common Pleas, in Cuyahoga County, Ohio. As noted in Defendant's motion to strike, the parties have agreed that "all discovery obtained in that case may be used in the instant litigation." (Doc. No. 55 at 3.)

"A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment[,]" and "[a] sham affidavit cannot raise a genuine issue of fact because it is merely a variance from earlier deposition testimony, and therefore[,] no reasonable jury could rely on it to find for the nonmovant." Id. at 253. Affidavits are generally viewed as "less credible than deposition testimony." See Crawford v. George & Lynch, Inc., 19 F. Supp. 3d 546, 557 (D. Del. 2013) (citing Jiminez, 503 F.3d at 253) (noting that affidavits "are usually drafted by counsel"); see also Jiminez, 503 F.3d at 253 (noting acknowledgement by other court that "[t]he deposition of a witness will usually be more reliable than his affidavit, since the deponent was either cross-examined by opposing counsel, or at least available to opposing counsel for cross-examination" (alteration in original) (citing Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969))).

"[A]n affidavit will not be disregarded as a sham if the affiant offers an explanation for the contradiction between the deposition testimony and the subsequent affidavit." Crawford, 19 F. Supp. 3d at 557 (citing Jiminez, 503 F.3d at 253). "However, if the contradiction between a subsequent affidavit and a prior deposition remains unexplained, the trial court may disregard the subsequent affidavit as a sham." Id. (citing Jiminez, 503 F.3d at 253). "To determine whether a deposition and affidavit are contradictory, the Court should not isolate any particular statements." Brown v. Showboat Atl. Propco, LLC, No. 08-cv-5145, 2010 WL 5237855, at *5 (D. N.J. Dec. 16, 2010) (citing Ragan v. Fuentes, No. 05-cv-2825, 2007 WL 2892948, at *10 (Sept. 28, 2007)). The determination of whether an affidavit constitutes a "sham affidavit" lies within the discretion of the district court. See Daubert v. NRA Grp., LLC, 861 F.3d 382, 389 (3d

3

Cir. 2017) ("[W]e review a district court's decision to exclude materials under the sham-affidavit doctrine for abuse of discretion.").

## III. DISCUSSION

### A. Motion to Strike

Through the instant motion, Defendant "moves . . . for an order striking the Declaration." (Doc. No. 55 at 1.) The Court observes, however, that although Defendant's motion is styled as a motion to strike, "motions to strike are generally made pursuant to Federal Rule of Civil Procedure 12(f)," which "provides no basis for striking material like that at issue here, as Rule 12(f) applies specifically to pleadings." See Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc., No. 1:12-cv-00993, 2016 WL 7117455, at *7 (M.D. Pa. Dec. 7, 2016) (citing Fed. R. Civ. P. 12(f); Moore's Federal Practice § 12.37[2] (Matthew Bender 3d ed.)). Accordingly, "the Court is persuaded that the better approach is to simply disregard any documents or information improperly before the Court." See id. (citing Sfakianos v. Shelby Cty. Gov't, No. 08-cv-2171, 2010 WL 4791680, at *2 (W.D. Tenn. Aug. 2, 2010); Lombard v. MCI Telecom. Corp., 13 F. Supp. 2d 621, 625 (N.D. Ohio 1998); Dillon v. Village of Piketon, Ohio, No. 2:10-cv-888, 2011 WL 2632802, at *2 (S.D. Ohio July 5, 2011)). The Court, therefore, will deny the motion to strike (Doc. No. 55), but examine the paragraphs of the Declaration specifically challenged by Defendant in the instant motion (Doc. No. 55), to determine whether the Court should consider them in connection with Defendant's motion for summary judgment (Doc. No. 42).[3]

---

[3] Defendant's motion requests, in pertinent part, that the Court "[s]trik[e] the Declaration . . . or at least strik[e] the paragraphs identified as offering contradictory, conclusory, and unsubstantiated averments, including paragraphs 4, 5, 6, 10, and 16." (Doc. No. 55 at 9.) Because Defendant specifically challenges only certain paragraphs in the Declaration and provides no support for its contention that the entire Declaration should be stricken if the Court determines a portion of it shall not be considered, the Court addresses only the aforementioned paragraphs in connection with Defendant's motion. See, e.g., Culver v. Specter, No. 1:11-cv-

4

### 1. Paragraph 4

Paragraph 4 of the Declaration reads, in pertinent part, as follows:

> Contrary to Article 6.2 of the Subcontract, [Plaintiff] was not required to obtain an express, written change order executed by [Defendant's] President or Senior Vice President as a condition precedent to seeking an increase in the Contract Price. [Plaintiff] was instructed by [Defendant] to send change orders and requests for extra work through [Defendant's] employee, Pat Andres ("Andres"). Once Andres received the change orders and requests for extra work, [Plaintiff] was informed that Andres would submit them to [Defendant] for payment.

(Doc. No. 50-1 ¶ 4.) Defendant challenges this paragraph on the basis that it conflicts with Ruple's prior deposition testimony, which provides, in relevant part:

> [Q.] And in response to your email, Jared Eiseman, on June 8th, 2016, responded by saying "Just spoke with Pat and any time and material tickets cannot be signed by Alan, they need to go to Pat. From there he reviews them and will get them to the office." Correct?
>
> A. Correct.
>
> Q. That's what you were told?
>
> A. Yep.
>
> Q. It does not say that Pat will approve them, it says that Pat will review them and get them to the office, correct?
>
> A. Then who approves them? Yes, I agree.
>
> Q. According to the subcontract that you signed and understood, the person – the only person who was authorized to bind the company to the extra work was the contractor's senior vice president or president, correct?
>
> A. Correct.

(Doc. No. 45-1 at 46: 11-25, 47: 1-4.)

---

02205, 2015 WL 5879608, at *3 (M.D. Pa. Sept. 30, 2015) (citing Summy-Long v. Pa. State Univ., No. 6-1117, 2009 WL 811616, at *2 (M.D. Pa. Mar. 26, 2009)) (acknowledging that a single statement would not "invalidate an entire declaration" and noting that the proper approach would be to disregard "the offending portion of the declaration").

According to Defendant, Paragraph 4 conflicts with a portion of the Deposition in which "Ruple testified that he was not told that Pat Andres would 'approve' [Plaintiff's] time and material tickets, only that Mr. Andres would submit them to [Defendant's] office[,]" and that "Ruple further admitted that payment could only be approved by [Defendant's] President or Senior Vice President." (Doc. No. 55 at 3-4.) In opposition, Plaintiff states that "the deposition testimony was incomplete and the Declaration is being submitted in order to explain how the parties' course of dealing[] was in direct opposition to the requirements of Article 6.2 of the Subcontract" (Doc. No. 56 at 5), and that because "the questioning at [the] [D]eposition pertained solely to an email from Jared Eiseman of Brackenridge and did not pertain to Mr. Ruple's conversations with and directives from Pat Andres . . . the Declaration not only provides necessary clarification for what actually occurred in the field regarding the waiver of Article 6.2, but also provides necessary clarification regarding the testimony that was elicited at [the] [D]eposition" (id.).

The Court concludes that Paragraph 4 is properly considered a sham affidavit and, therefore, should be disregarded in connection with Defendant's motion for summary judgment. As an initial matter, the Court concludes that Paragraph 4 of the Declaration ultimately conflicts with the relevant portion of the Deposition, and that although Plaintiff argues that the Declaration is appropriately viewed as providing further clarification of Ruple's deposition testimony (Doc. No. 56), Plaintiff has failed to "demonstrate[e] a plausible explanation for the conflict." See Baer, 392 F.3d at 624 (citing Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991)). Further, "[w]hen there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit." See id. at 625 (citing Bushell v. Wackenhut Int'l, Inc., 731 F. Supp. 1574, 1578 (S.D. Fla. 1990)). In the case

at bar, however, Plaintiff has not pointed to any evidence of record that would independently corroborate his statement in Paragraph 4 of the Declaration: that he was not required to obtain an express, written change order executed by Defendant's president or senior vice president in order to seek an increase in the contract price, but rather, was instructed by Defendant to send the appropriate documents to Pat Andres, an employee of Defendant. (Doc. No. 51 ¶ 5.) Accordingly, the Court will not consider Paragraph 4 of the Declaration (Doc. No. 50-1), in connection with Defendant's pending motion for summary judgment (Doc. No. 42).

### 2. Paragraph 5

Paragraph 5 of the Declaration states: "Contrary to Article 2.7 of the Subcontract, Brackenridge had written knowledge prior to the execution of the Subcontract that Chagrin Valley Steel Erectors would be performing the labor at the Project." (Doc. No. 50-1 ¶ 5.) Defendant asserts that this paragraph contradicts a portion of the Deposition, in which Ruple's testimony reads as follows:

> Q. . . . In Article 2.7 of the subcontract it states that, ["]Unless otherwise stated in the contract documents, the subcontractor as soon as practicable after award of the contract shall furnish in writing to the contractor the names of the person or entities who are to furnish materials, supplies or equipment, including materials fabricated to a special design proposed for each portion of the work where the expected value of the materials, supplies or equipment is over $2,500." Did [Plaintiff] furnish in writing the names or persons of those entities?
>
> A. No.

(Doc. No. 45-1 at 29:11-23.)

Defendant argues that Paragraph 5 of the Declaration contradicts Ruple's deposition testimony, asserting that Ruple "unreservedly testified [in the Deposition] that his company did not furnish written notice to Brackenridge in accordance with Article 2.7." (Doc. No. 55 at 4.) Plaintiff, however, maintains that no such conflict exists because "Ruple testified at his

7

deposition that Brackenridge had notice of Chagrin Valley Steel Erectors providing labor or supplies to the Project from the quotation to the Project." (Doc. No. 56 at 6.) Further, Plaintiff posits that "Brackenridge's employees saw Chagrin Valley Steel Erectors providing labor or supplies at the Project and let the work continue[,]" and, therefore, "the Declaration merely clarifies [the] deposition testimony and is admissible in order to raise a genuine issue of material fact." (Id. at 6.) Plaintiff additionally argues that the Declaration is "supported by time and material tickets that were provided to Pat Andres[,]" which were "submitted to Andres, based on Brackenridge's instructions to do so" and, consequently, "it is clear that the Declaration . . . clarif[ies] Mr. Ruple's deposition testimony." (Id.)

The Court concludes that Paragraph 5 should be disregarded. As an initial matter, Paragraph 5 appears to conflict with Ruple's deposition testimony as to whether Brackenridge possessed certain written knowledge of the Chagrin Valley Steel Erectors' work with respect to the project. While the Court acknowledges Plaintiff's reference to "time and material tickets that were provided to Pat Andres" for the subject work, which Plaintiff indicates are "[a]ttached as Exhibit 3 to the Declaration" (id. at 56), the Court concludes, however, that Plaintiff has not adduced sufficient evidence to overcome the apparent contradiction between the Deposition and Paragraph 5 of the Declaration. See, e.g., Daubert, 861 F.3d at 392 (describing import of "independent evidence in the record" for purposes of corroborating a challenged affidavit); see also USAA Cas. Ins. Co. v. Metro. Edison Co., No. 1:12-cv-1178, 2014 WL 3534946, at *4 (M.D. Pa. July 16, 2014) (citing Jiminez, 503 F.3d at 254) (stating that "if the proponent [of the affidavit] offers a satisfactory explanation for contradictory statements or independent evidence in the record to corroborate the affidavit, courts generally refuse to disregard the affidavit"). Here, although Plaintiff refers to certain time and material tickets as such independent evidence

8

of record, this evidence, on its own, does not independently demonstrate that Defendant "had written knowledge prior to the execution of the Subcontract that Chagrin Valley Steel Erectors would be performing the labor at the Project" (Doc. No. 50-1 ¶ 5), nor does it permit Plaintiff to overcome the apparent contradiction between Ruple's testimony and the relevant portion of the Declaration. The Court, therefore, will exercise its discretion to disregard Paragraph 5 of the Declaration. See Daubert, 861 F.3d at 389 (explaining that "a district court's decision to exclude materials under the sham-affidavit doctrine" is appropriately examined for abuse of discretion).

### 3. Paragraph 6

Paragraph 6 of the Declaration states: "The written change order provision set forth in Article 6.2 [of the Subcontract] had been waived based on Ruple's course of dealings with Andres." (Id. ¶ 6.) Defendant argues that this statement amounts to an "impermissible legal conclusion[]" because "[w]aiver . . . is a legal question to be decided by the Court" and Ruple being a fact witness renders him "plainly incompetent to arrive at this conclusion in the context of a declaration." (Doc. No. 55 at 5.) Plaintiff argues in opposition that the Declaration complies with Federal Rule of Civil Procedure 56 in that Ruple: (1) "has personal knowledge regarding the waiver of Article 6.2"; (2) Ruple "was instructed by Brackenridge to submit time and material tickets to Andres . . . which [he] did"; (3) "Andres subsequently directed Ruple to proceed with the extra work and informed [Plaintiff] that it would be paid for extra work"; and (4) "[t]his pattern continued from June through August 2016." (Doc. No. 56 at 7.) Additionally, Plaintiff asserts that the Declaration complies with Federal Rule of Evidence 701 because Ruple "is able to testify regarding his perceptions as to the lack of written change order requirements and how the course of the parties' dealings changed the requirements of Article 6.2 of the Subcontract." (Id. at 7.)

9

The Court concludes that disregarding Paragraph 6 is proper, as the statement therein amounts to an impermissible legal conclusion that fails to satisfy Rule 56's requirement that the statement be based on the declarant's personal knowledge. "A legally conclusive statement is a statement in which the law is applied to the facts." Knopick v. Downey, No. 1:09-cv-1287, 2013 WL 1882983, at *14 (M.D. Pa. May 6, 2013) (citing Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron, Inc., 623 F. Supp. 2d 518, 533 (D. Del. 2009)). As noted supra, Paragraph 6 states, in the opinion of Ruple, that Article 6.2's written change order provision "had been waived based on Ruple's course of dealing[] with Andres." (Doc. No. 50-1 ¶ 6.) Such a statement amounts to a situation "in which the law is applied to the facts" in that it represents Ruple's opinion that, based on his interactions with Andres, the relevant contractual requirement was waived, and the issue of waiver represents a legal conclusion as to the breach of contract claim at issue. Accordingly, the Court will disregard Paragraph 6 of the Declaration for purposes of its summary judgment analysis.

### 4. Paragraph 10

Paragraph 10 of the Declaration states that "Brackenridge's on-site employee(s) knew that Chagrin Valley Steel Erectors was performing labor on the Project and let the work continue." (Id. ¶ 10.) According to Defendant, this statement is "clearly beyond the scope of [] Ruple's personal knowledge" because Ruple's statement is conclusory and "[n]owhere does [he] offer any explanation for how he knows what Brackenridge's employees allegedly 'knew.'" (Doc. No. 55 at 5.) In response, Plaintiff argues that an affidavit may satisfy the personal knowledge requirement of Federal Rule of Evidence 602 if "evidence is introduced to support a finding that the witness has personal knowledge of the matter" and that, in the case at bar, Ruple's testimony in the Deposition "states that Brackenridge had written notice from Ruple's

quote that Chagrin Valley Steel Erectors would provide labor and/or supplies at the Project." (Doc. No. 56 at 8.) Aside from referring to the Deposition, as noted supra, Plaintiff does not appear to cite a specific portion of Ruple's deposition testimony in support of its position. (Id.)

The Court concludes that Paragraph 10 of the Declaration is not based on Ruple's personal knowledge and that, as a result, it should be disregarded. Under Federal Rule of Evidence 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." See Fed. R. Evid. 602. Further, "[e]vidence to prove personal knowledge may consist of the witness's own testimony." Id. "If the jury could reasonably find that the witness perceived the event, the witness's testimony should be admitted." Tumpa v. IOC-PA-US-RSM Enters., No. 2:17-cv-00625, 2018 WL 3862091, at *1 (Aug. 14, 2018) (citing United States v. Gerard, 507 F. App'x 218, 222 (3d Cir. 2012)). In the instant case, the challenged portion of the declaration – which states that "Brackenridge's on-site employee(s) knew that Chagrin Valley Steel Erectors was performing labor on the Project and let the work continue" (id. ¶ 10) – does not state what Ruple, as the declarant, actually knew or knows, but rather, purports to state what others know, and, consequently, should be disregarded for purposes of the Court's summary judgment analysis. See, e.g., Keating v. Bucks Cty. Water & Sewer Auth., No. 99-cv-1584, 2000 WL 1888770, at *4 (E.D. Pa. Dec. 29, 2000) ("Although the statement is based on a fact and is not merely conclusory, the assertion that it 'was generally known,' rather than known by the affiant, precludes the court from considering it on a motion for summary judgment. This statement does not establish that there will be admissible evidence of what was 'generally known' at trial."). Accordingly, the Court will disregard Paragraph 10 of the Declaration in disposing of the pending motion for summary judgment.

### 5. Paragraph 16

Defendant's motion also presents a challenge to Paragraph 16 of the Declaration, which states the following:

> [Defendant] (on the advice of counsel) knew that [Plaintiff] needed to be paid for its work under the Subcontract and purposefully and deceitfully sent [Plaintiff] a check in the amount of $34,504 so that it could utilize an accord and satisfaction defense in this lawsuit and avoid paying [Plaintiff] for its extra costs. [Defendant] (through conversations between [Plaintiff's] and [Defendant's] counsel) knew that [Plaintiff] was in a desperate financial situation on account of being owed over $100,000 for work performed under the Subcontract and couldn't continue to operate its business without depositing the $34,504 check.

(Doc. No. 50-1 ¶ 16.) Defendant argues that the Court should disregard the above paragraph on the basis that Ruple "has no personal knowledge of any advice given to [Defendant] by its legal counsel[,]" nor does he "have any personal knowledge of [Defendant's] intent in sending [Plaintiff] a check in the amount of $34,504.00 in October 2016." (Doc. No. 55 at 6.) To that end, Defendant further asserts that "Ruple does not even attempt to disclose the alleged basis for his 'personal knowledge' of these matters in his Declaration." (Id.) Plaintiff rejects this argument, stating that Ruple "is competent to testify regarding [Defendant's] intent regarding its submission" of a check for $34,504 and that "[b]ased on email communications from June 2016, [Defendant] knew that [Plaintiff] needed to be paid for its work at the Project." (Doc. No. 56 at 8.)

Similar to its analysis of Paragraph 10, as explained supra, the Court concludes that Paragraph 16 should also be disregarded for summary judgment purposes. Notably, Ruple's statement speaks to purported knowledge on the part of Brackenridge, rather than on the part of Ruple himself. (Doc. No. 15-1 ¶ 16.) Such a statement, therefore, is not a product of "personal observations." See Tumpa, 2018 WL 3862091, at *1 (explaining basis for conclusion that Court could properly consider affidavit when disposing of motion for summary judgment). The

12

challenged paragraph, rather, puts forth a statement that certain facts were known or intended by Defendant, "rather than known by the [declarant]," Ruple, and, therefore, "precludes the [C]ourt from considering it on a motion for summary judgment." See Keating, 2000 WL 1888770, at *4. Accordingly, the Court will disregard Paragraph 16 of the Declaration in examining Defendant's motion for summary judgment.

B.     **Motion for Sanctions**

Through the instant motion, Defendant also moves for the imposition of sanctions under Federal Rule of Civil Procedure 56(h), which permits the Court to impose sanctions on a party, after providing the party with notice and a reasonable time to respond, if the Court is "satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay." See Fed. R. Civ. P. 56(h). The rule further provides that the Court "may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as result" and that "[a]n offending party or attorney may also be held in contempt or subjected to other appropriate sanctions." See id. In support of its motion, aside from stating why it believes the Court should disregard the subject paragraphs in the Declaration, Defendant does not appear to advance a more specific argument as to its request for the imposition of sanctions pursuant to Rule 56. (Doc. No. 55 at 4-7.) In opposing the instant motion, Plaintiff states that the motion, including its request for sanctions, "should be denied because the Declaration is not a sham affidavit and was not submitted in bad faith." (Doc. No. 56 at 4.)

The Court concludes that, in the case at bar, the imposition of sanctions is unwarranted. As an initial matter, it bears noting that Rule 56's language as to sanctions is permissive in nature, as it states that the Court "may" order the submitting party to pay certain expenses specified in the rule. See Fed. R. Civ. P. 56(h). Moreover, the decision of whether to impose

sanctions falls within the inherent authority of the Court. See, e.g., Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc., 57 F.3d 1215, 1224 (3d Cir. 1995) (acknowledging "the federal courts' inherent power to control the conduct of those who appear before them"). In the instant case, however, while the Court has determined that portions of the Declaration are problematic, as explained supra, the Court is not persuaded that the Declaration was "submitted in bad faith or solely for delay." See Fed. R. Civ. P. 56(h). Accordingly, the Court will deny Defendant's motion for sanctions. (Doc. No. 55.)

## IV. CONCLUSION

Based on the foregoing, the Court will deny Defendant's motion to strike and for sanctions (Doc. No. 55), but will disregard the portions of Ruple's Declaration deemed improper, as stated supra, for purposes of the Court's analysis of Defendant's motion for summary judgment (Doc. No. 42). An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Western District of Pennsylvania
*Sitting by designation*